(No. 74-CV-44—

MARY BARTH, on behalf of RICHARD J. BARTH, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1975.*

CARL F. G. HENNINGER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; JEROME FELSENTHAL, Assistant Attorney General, for Respondent.

PER CURIAM.

This claim arose out of a criminal act of murder that occurred on March 18, 1974, in Downers Grove. Mary Barth, widow of Richard J. Barth, seeks compensation pursuant to the provisions of the "Crime Victims Compensation Act," *Ill.Rev.Stat., 1973, Ch. 70, Sec. 71, et seq.* (hereafter referred to as the "*Act*").

This court has carefully considered the application for benefits submitted on the form prescribed and furnished by the court; and a report of the Attorney General of the State of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted before the court, the court finds:

1.  That the claimant's deceased husband, Richard

J. Barth, age 25, was a victim of a violent crime, as defined in Sec. 2(c) of the Act to wit:

"Murder", (*Ill.Rev.Stat., 1973, Ch. 38, Sec. 9-1*).

2. That on March 18, 1974, the victim, Richard J. Barth, of 945 Burlington, Downers Grove, was employed as a police officer [badge #11] for the Village of Downers Grove Police Department. Officer Barth reported for duty on this day at the 7:45 a.m. roll call. He began his assignment at 8:00 a.m., which was motorized patrol of Beat 1, 2, 4 and 5. At 12:28 p.m. Officer Barth was directed by radio communication to respond to a "suspicious person" call at Northwest Park, located at Cornell and Chicago Avenues in Beat 4. At 12:33 p.m. victim Barth acknowledged that he was at the scene, and would continue communication by portable radio. At the same time one Officer Ralph Harrison also of the Downers Grove Police Department, was assigned to the scene as back-up to Officer Barth. Officer Harrison arrived at Northwest Park at 12:35 p.m. As Officer Harrison stepped away from his squad car, he heard four shots fired, then heard from Officer Barth, via his portable radio, that he had been shot. No further communication was heard and Officer Harrison proceeded into the wooded area searching for Officer Barth, and found him. He was alive but unable to speak.

3. That based on the police report and coroner's report, the victim apparently was shot while struggling with his assailants. Subsequent to being shot the victim was able to release four rounds from his own revolver. The victim suffered two gun shot wounds from a .25 caliber pistol that punctured both lungs. He was dead upon arrival at Hinsdale Sanitarium.

4. That subsequent investigation resulted in the arrest of two individuals, both minors, and at this time

they are being held at the DuPage County Youth Home. Claimant fully cooperated with law enforcement officers.

5.   That there was no evidence to indicate that the victim's injuries were attributable to the victim's wrongful act or substantial provocation of his assailants. The victim was in the active performance of his duties as a law enforcement officer.

6.   That there was no indication whatsoever that the victim was a relative of or ever shared the same household with his assailants.

7.   That a timely notice was filed on April 25, 1974. Claimant's application, Subrogation Agreement and Authorization for Records and Reports were filed with the Clerk of this court on May 20, 1974.

8.   That the claimant, Mary A. Barth, is the widow of the deceased victim, Richard J. Barth, and was dependent on the victim for her support.

9.   That the claimant apparently has received or is eligible to receive the following compensation or benefits from sources other than this Act as a result of the death of her husband:

| | |
|---|---|
| Workmen's Compensation | $26,900.00 |
| United Benefit Life Insurance Company | 25,000.00 |
| Life Insurance Company of Illinois | 20,000.00 |
| Downers Grove Group Insurance | 10,000.00 |
| State of Illinois (Law Enforcement and Fireman's Compensation) | 20,000.00 |
| Federal Social Security Death Benefit | 255.00 |
| Accrued Sick Days and Personal Days paid by Village of Downers Grove | 998.82 |

$103,153.82

In addition, claimant will receive from a Widow's Pension the sum of $437.50 per month for the rest of her life or until she remarries.

10. That there is no claim for medical or hospital expenses since the victim was dead upon arrival at the hospital. That life insurance proceeds, after excluding the first $25,000, more than cover the funeral bill.

11. That the one phase of this claim which is cognizable under the Act is claimant's loss of support as a dependent of the victim, and the court analyzes this claim as follows: The victim was employed by the Village of Downers Grove Police Department. His average monthly earnings [minus FICA, State and Federal withholding tax] for the 6-month period prior to his death were $643.58 per month. Since this income is more than $500 per month, we are required [by §4 of the Act] to use the amount of $500 per month in calculating the claimant's loss of future support from her deceased husband. He was 25 years old when he died. Projecting an income of $500 per month over a period of the decedent's normal life expectancy according to actuarial tables [or only to the early retirement age of police officers] we arrive at a sum which, after deducting all the death benefits to the claimant shown in ¶9, far exceeds $10,000, the maximum amount that may be awarded under the Act [§7(c)].

Considering the fact that the claimant has received substantial death benefits in lump sum payments, we hold that the further compensation to be awarded to her under this Act [pursuant to §8(a)(4)] should be in periodic monthly payments. Considering the further fact that the claimant receives a widow's pension in the sum of $437.50 per month for the rest of her life or until she remarries, we find that periodic payments under this Act in the amount of $250 per month, to supplement her pension, would give the claimant a monthly income of slightly more than her husband's net income at the time of his death. We will, therefore, order periodic payments

to the claimant in the amount of $250 per month for a period of 40 months, but that such payments be terminated upon her remarriage, if that event occurs within the 40 months.

Parenthetically, the Court will comment on the fact that the claimant apparently will be entitled to a lump sum payment from the State in the sum of $20,000 pursuant to the Law Enforcement Officers and Firemen Compensation Act. The court has been advised by members of the General Assembly that the Legislature did not intend to provide death benefits to claimants under both the aforesaid Act and the Crime Victims Act. However, until such legislative intent is expressed in the statutes, the dependents of a police officer who is murdered while in the active performance of his duties, are eligible to apply for death benefits under both Acts.

It Is HEREBY ORDERED as follows:

1. That the claimant, Mary Barth, as the widow of the deceased victim of a violent crime, is hereby awarded periodic monthly payments for loss of her husband's support in the sum of $250 per month for a period of 40 months or until her widowhood is terminated by her remarriage, if the later event occurs before the said 40 month period has expired and the maximum amount of $10,000 has been paid. The said periodic payments for support will also be terminated in the event of the death of the claimant.

2. That it is the duty of the claimant to inform this Court in writing if she remarries before this award is paid in full, and it is the duty of her personal representative to inform this Court in the event of claimant's death.